Good morning, Your Honor. We're all followed with the Federal Public Defender's Office, Northern District of California, for the Petitioner Appellant, Mr. Randell. And if you could keep your voice up, please. Thank you, Your Honor. Again, I'd like to reserve two minutes for rebuttal, Your Honor. Okay. The issue here is clear, whether or not the trial court gave accurate instructions or complete instructions as to Mr. Randell's theory of defense. His theory of the appeals decided here was that the instructions that were given were sufficient. They were not. They were not sufficient in many respects. There were several instructions that the Court pointed to, to determine one simple conclusion. That simple conclusion is found at ER 31. When one justifiably uses deadly force against an aggressor, its use is unlawful. It's lawful. And if it kills the aggressor or an innocent bystander, the killing is excusable and not a crime. What the California Court of Appeals did in looking at the instructions that were given determined that five separate instructions, justifiable homicide, justifiable homicide and self-defense, excusable homicide, transferred intent, and self-defense were sufficient to convey to those jurors Mr. Randell's defense. I would like to address in particular the transferred intent instruction. The transferred intent instruction was wholly insufficient to convey to those jurors that they were to then take that jury instruction and then rewrite it, rewrite it to include a basis for Mr. Randell having been justified in his actions. The transferred intent instruction is a means by which the jury was to infer and determine a mental state, an actual element of the offense. So you referred to the transferred intent instruction, which, can you give me a number, jury instruction number, CALJIC? The transferred intent instruction is found at CALJIC 8.65. It is a record at ER 1109. Okay, I found it. I'm sorry, you told me a page number, but I didn't hear it. ER 1109. 1109. Okay, thank you. And so how, why was it unreasonable of the court of appeal to think that that instruction was not sufficient given the facts of this case? Well, Your Honor, there's a couple reasons why. One is the grouping of that instruction. That instruction was given with the other element, with the other offenses that Mr. Randell was charged with. There's the grouping as well as what that instruction read clearly, literally. What the State argues is that there's no way the jurors should have read that instruction literally. In fact, they should have. That was their duty, to follow the law. That instruction, if it read carefully, when one attempts to kill a certain person by mistake, inadvertently kills a different person, the crime, if any, that is an instruction that those jurors were given to establish the offense, Mr. Randell's mental state, which is to transfer that intent for the killing, just basically to prove the offense, not as justification. Justification in transferred self-defense, which is recognized in People v. Matthews, which we cite in our brief, that defense instruction is an instruction that goes to why Mr. Randell was justified. In other words, if Mr. Randell was justified in his use of self-defense against Mr. Maldonado, the unintentional and inadvertent killing of Ms. Schlemm would have been justified. That would not have been a crime. This offense here determines transferred intent, establishes an element of the offense itself. Did counsel at the trial ask for a modified instruction that made it more specific to the circumstances of this case? No, Your Honor, he did not. Counsel may have well been deficient in his performance. However, that issue has not been certified. It's not before the Court. It is our position that even under a claim of ineffective assistance of counsel, that does not preclude granting the habeas in this case, because separate and apart from whether or not his counsel was ineffective is the issue of the instructional error and whether the jury instructions were sufficient to apprise the jury and consider whether there was a reasonable likelihood that it precluded their consideration of constitutionally relevant evidence. Here's my problem with this case, and that is the use in the oral instruction of the word killed. And I'm on ER-819-820 as the judge is reading the instructions to the jury. I'm starting at the bottom of 819-926, describing when you've got a justifiable homicide, and we're talking self-defense. Homicide is justifiable and not unlawful when committed by any person in defense of himself, if he actually and reasonably believed that the individual killed intended to commit a forcible and atrocious crime, dot, dot, dot, dot, dot. But of course, this is not self-defense against the person who actually was killed. So this instruction is clearly inapplicable because the issue is whether or not he was in reasonable fear of his life from Maldonado, not from this poor, innocent, bystanding woman. So, I mean, that's the argument, that this instruction is just wrong because, as literally understood, if the jury was focusing on it, there's no valid self-defense here because the person killed was not the person threatening. That is precisely our argument, Your Honor. But here's my problem. That's what the transcript says. The actual instruction that went into the jury doesn't have the word killed in it. And we know from earlier on that the trial judge deliberately took the word out of the instruction for precisely the reason that we're here discussing. So I don't know whether the transcript's right or wrong, but I do know that the written instruction that goes into the jury, which you will find on 1084, omits the word killed. Your Honor, although it may omit the word kill, that instruction, both that instruction, as the Court noted, the justifiable homicide instruction, refers upon a little reading to Ms. Schlimm, the person against whom clearly Mr. Randall had no intent or no basis to use deadly force. That instruction, 5.13, as well as 5.12, refer to the other person. That other person in the written instructions found at Excerpt of Record 1084 and 1083 both refer to another person. That other person is clearly not Mr. Maldonado. And a jury reading that instruction literally would have determined that Mr. Randall was not entitled to claim self-defense against Ms. Schlimm. Another consideration, Your Honor, is the excusable homicide instruction. That instruction in particular was of no use to the jurors in understanding how Mr. Randall's use of self-defense and deadly force against Mr. Maldonado may have excused his conduct. If you look carefully at that instruction in Clause 2, there's a care or caution. That instruction requires that even if the jurors believed that Mr. Randall was entitled to use self-defense against Mr. Maldonado, that he had to exercise care or caution. There is no care or caution required for Mr. Randall to exercise his right to self-defense against Mr. Maldonado. The jurors may have concluded that this was a fight based upon a sudden quarrel, that Mr. Maldonado, Mr. Randall then began to defend himself, and in defending himself unjustifiably or in a careless or reckless manner, tried to defend himself and did not exercise reasonable care or caution in exercising that right. That, we submit, would satisfy that this juror likely interpreted this instruction to preclude consideration of Mr. Randall's defense. Can I ask you this? I guess what seemed most powerful to me from the state standpoint was the fact that the lawyers for both sides argued the case as though self-defense was very much before the jury. And I think the State court of appeal relied on that fact as well. What are we supposed to do with that? I mean, even your client's lawyer at trial looked at this set of instructions and felt, of course I can argue self-defense. The prosecution never corrected him or her on that. And so why wouldn't the jury, having heard the entire closing argument, was a focus on the defense of self-defense? Why wouldn't the jury come away thinking, well, geez, that's all the lawyers talked about. The judge gave us these instructions. Self-defense is in the case. Well, Your Honor, the argument of counsel is one consideration to determine whether or not these instructions were sufficient. In this instance, counsel at no point argued transferred self-defense. He argued strictly self-defense. And if you recall from the excerpt of record here, the State's position was self-defense didn't apply at all. That self-defense was no defense at all to felony murder. Right. Because it was in the course of a robbery, and the jury rejected the felony murder charge. But I'm just saying in terms of what the jury is hearing from your client's lawyer is, of course, this was in self-defense. Here's my theory. No explanation of, you know, don't worry about the fact that it was someone other than Mr. Maldonado who was killed. There's no rebuttal from the prosecution saying, jurors, you can't apply self-defense because, you know, the aggressor wasn't the one killed. There's never any discussion of that. So why do you – I guess your argument has to be that the jury read these instructions and felt legally barred from even considering the defense of self-defense. And I guess I'd – given the way the trial played out, why would they think that? I think they did consider self-defense. However, they did not consider it in relation to Mr. Maldonado – Mr. Randall's conduct with respect to Mrs. Schlinn. More importantly here, Your Honors, the jury is instructed specifically at ER 786 that the conflict between the attorney's argument and instructions, they must follow the instructions. So his counsel could have stood there and argued repeatedly and incessantly and vigorously that the jury should acquit Mr. – Mr. Randall in this instance because his – he had no intention to – to kill Mrs. Schlinn, and that the intent he had in defending himself against Mr. Maldonado should be transferred to the unintentional killing of Mrs. Schlinn in this instance. Counsel, counsel, what should we take, if anything, from the fact that he was charged with murder, but – felony murder, but he was – the jury convicted him of voluntary manslaughter. Isn't that a form of imperfect self-defense? I mean, didn't they – shouldn't we see or take from that that the jury included there was an imperfect self-defense that was transferred to the death of Mrs. Schlinn? Your Honors, a couple of issues with respect to the imperfect self-defense and the possibility that the jury determined that Mr. Randall had exercised an imperfect right to self-defense. That cannot be conclusively determined from the jury's verdict. Here, the jury may well have – may have – was also advised as to sudden quarrel. It is equally a possible – a potential result that they determined that this was an act or a killing upon a sudden quarrel. They received both the sudden quarrel definition under the – under the voluntary manslaughter as well as the imperfect self-defense. Additionally, what we have here is a provocation, a provocation of if the jury were to have believed that Mr. Maldonado pulled his gun first, that pulling of the gun and aiming it at Mr. Randall is clearly sufficient provocation. And Mr. Randall would not have had an imperfect right of self-defense. He would have had an absolute right to self-defense in that instance. So it cannot be conclusively said. It's our position that these – that these – both of these theories are in balance. And under O'Neill, the petition must be granted on that basis. It cannot be conclusively said that the jury determined that this was Mr. Randall having exercised an imperfect right to self-defense and arrived at this sort of compromised verdict. Also, the – that must be in consideration with the justifiable defense instruction with the care or caution that is – that they found there. They may have simply determined that he did not exercise care – sufficient care or caution in exercising his right to self-defense, and they settled on the voluntary manslaughter. Now, there's another issue I want to address is the People v. Matthews case. That case is relied upon in many respects by the – in the State's briefing to preclude a granted petition here. It should not. People v. Matthews is distinguishable on several grounds and several basis. That case, although it recognizes the defense of transfer of self-defense, that was a very different self-defense instruction. That self-defense instruction, if we had that in this case, if we had that instruction at the trial court, I doubt there would be a basis for the petition. That instruction provided that if the right to self-defense existed, this would have been a complete defense to any crime and not a crime. At no point do we see an instruction in here in reference to the self-defense to explain to those jurors that if they found that he was defending himself against Mr. Maldonado, it is not a crime. Another consideration with respect to Matthews is that determination, that transfer of self-defense was inconsequential to Ms. Matthews' claim. Ms. Matthews' claim was based upon rape trauma syndrome, and everyone – there was no question in that case whether or not she had any – she had the right to claim a right to self-defense. Everyone agreed that she had a right to claim a self-defense. That was not the issue before the Court in Matthews. Here, moving on to the harmless error review, this error was not harmless. It was substantial and injurious. Here, the jury was in that jury room and was not advised specifically of the A, B, and C instructions that they would need in order to determine that Mr. Randall should be acquitted of this conduct. That error was egregious. With that, Your Honor, I would reserve my time. Roberts. Thank you. You're here from the State. May it please the Court. Masha Davidoff for the Office of the Attorney General for Respondent. The State court, appellate court, reasonably found, we submit, that the jury was sufficiently instructed when you consider the sum total of the jury instructions in light of each other, in light of the evidence, in light of the arguments of counsel. In Middleton v. McNeil, the Court determined that even in a jury instruction situation where one of the instructions is explicitly wrong and three other instructions clearly explain to the jury what the law is, that is sufficient. And here, the State appellate court was going to be able to say, you know, I'm not I'm absolutely not, Your Honor, not here. You would not concede that? I would not concede that, no. Well, what about the one that Judge Fletcher read? That clearly was wrong, as read to the jury, right? The instructions that were read to the jury with respect to the self-defense thoroughly covered all possible instances of self-defense. I mean, there's a whole host of Calgic instructions of self-defense. Okay. Wait. I'm talking about the one instruction that you heard read that was wrong, right? It should not have been given in this case, right? I would not agree with that, Your Honor. How can you not agree with that? There's no dispute as to who was killed, right? And there's no dispute that she didn't do anything to put Mr. Randall in fear? Well, what I would submit, Your Honor, is that Calgic 8.65 makes clear that whatever intent the Petitioner had at the time of the killing transfers to whoever the ultimate victim was. And so here, she was the ultimate victim. And so in light of all of the instructions, the jury could clearly understand that language to mean to refer to Judith Schlem. I confess I disagree with you. If you take the language as read to the jury, it makes it very clear that self-defense is available when the person killed is the person who was threatening. That's what's when the that's what the instruction says. It doesn't say self-defense is available when the person killed is someone other than the person who's threatening. I find no way to get around what the instruction says as that instruction was written, as that instruction was read to the jury. So for me, if that's the controlling instruction, the question is how bad did that how bad a state of affairs does that create? With respect, Your Honor, I believe that that instruction, if it was given by itself to the jury without any other instructions surrounding it, the jury would have been led to understand that the only person they can use it against was the person who was in the instruction. However, the jury was instructed with Calgic 101, and Calgic 101 makes clear you are not to read the instructions in a vacuum. Each individual instruction is to be read in light of the others. And it was obvious. Kagan, so what other instruction takes us away from the literal effect of the instruction that was read to the jury about when the self-defense is a proper defense? Well, the jury is expected to choose among the host of the self-defense instructions that were available. No, I got that. So I'm asking you what other instructions that were given take care of the problem that is created by the instruction that's causing me the difficulty? Well, the particular – what is the particular Calgic instruction that Your Honor is referring to that was read to the jury? The one that causes me the trouble? Yes. It's the instruction that was read to the jury on ER-819-820. The judge says homicide is justifiable and not unlawful when committed by any person in defense of himself if he actually and reasonably believed that the individual killed intended to commit a forcible and atrocious crime, da, da, da. That's the one. Well, and the other one that bothers me is the written one at, I think, well, it's Calgic 512. Your opponent here referred to that. That instruction to me has the exact same effect. It says the reference to the other person there, right, is clearly it's not talking about Ms. Schlem. So I have the same problem whether it's oral or written. I think – I'm just shocked that you're not going to concede that those instructions were – should not have been given here. They clearly seem to me to be wrong. And so what I'd like to hear from you is the same question that Judge Fletcher just put, is, okay, so point us to a different instruction that actually you think from the State's standpoint the best explanation to the jury that they could still find that this was an act of self-defense, notwithstanding the fact that Mr. Maldonado wasn't the person killed. I would refer, Your Honor, to – so Calgic 5.13, which is what Justice Fletcher is referring to, is, you know, what – okay, so homicide is justifiable if the Petitioner actually and reasonably believed that the individual killed intended to commit, et cetera, et cetera. So Calgic 8.65 says when one attempts to kill a certain person, so that would be the mistake or inadvertence kills a different person, the crime, if any – so that's, you know, we have a justifiable, say, act, if any – so committed is the same as though the person originally intended to be killed has been killed. So 8.65 by its terms very specifically modifies intent toward any particular person that is killed. So here, this was Judith Schlem. And understanding that, defense counsel argued in closing very extensively about self-defense. Everyone was on the same page that Judith Schlem was clearly – So I think the prosecutor was not on the same page because he argued that – he said the evidence, as you heard it in this case, was that the defendant pulled the gun on Mr. Maldonado and fired at him. After that, Mr. Maldonado returned fire. There's a serious question whether there's really any application of self-defense in this case other than to Mr. Maldonado. That's what the prosecutor argued. So he didn't understand it that way. So the prosecutor argued in opening – in his opening closing argument, the prosecutor argued for felony murder. I mean, the prosecutor here was very clearly pushing for first-degree felony murder,  In rebuttal, the prosecutor did not say, oh, well, you know, here you can't have self-defense toward the ultimate victim, because here the only self-defense was toward Maldonado. The prosecutor still was focused entirely on whether it was actually reasonable for the Petitioner to experience the need for self-defense, to experience the need for the use of deadly force. Not that the ultimate victim, you know, doesn't get the transferred intent, but that the appellant's – I'm sorry – the Petitioner's need for self-defense was unreasonable. And here, the jury ultimately rejected that, ultimately rejected that his fear was reasonable and that the need for self-defense was – for deadly force, I'm sorry, was reasonable. They accepted that it – Did anyone dispute that Mr. Randall said it's not worth it right before the gunfire went off? Did anyone dispute below? At trial. Oh, at trial. I'm not – I'm not certain, Your Honor. And the Court of Appeals certainly did not focus on that particular factual determination and factual dispute whether it existed. The Court of Appeals – Did the Court of Appeals adopt it? Did the Court of Appeals say that that was the fact, that that's what Mr. Randall said? The Court of Appeals – the Court of Appeals, yes, accepted the factual – the factual events below. But the Court of Appeals didn't focus on whether the Petitioner's need for self-defense was reasonable or not in light of what Mr. Maldonado said or in light of what Judith's daughter-in-law overheard. The Court of Appeals focused more on Matthews and, really, whether the transferred intent portion of the jury instructions were sufficient. And we submit here that was a reasonable determination of the Court of Appeals, that it was sufficient. And it was certainly a reasonable decision. It certainly is not so lacking in justification that Richter, under Richter, it would be beyond. But the transfer – I appreciate you focusing us on 8.65, but that's a pro-prosecution instruction. It's not an instruction that helps the defense. I mean, that's saying that, you know, the crime is going to be the same. It doesn't say that if you were otherwise going to acquit, you know, because if – had Mr. Maldonado been killed, you can still acquit even though Ms. Schlem was the one killed. It doesn't say anything remotely close to that. Well, Your Honor, I would certainly disagree that it is a pro-prosecution instruction. It is a calgic instruction. It's an instruction that could be requested by either side. It could be given by the judge depending on the facts of the crime. How would – just – this is what I don't understand, I guess. How would it help the defendant in a case where the defense is self-defense? I'm just – I mean, I'm looking at it again, and you read it before, but I just am trying to even get my head around the theory under which this helps the defendant in a self-defense case. Well, it helped the defendant here in that he was able to use the defense of being afraid of a deadly act of a third party that he was having a dispute with and shot an innocent bystander who was minding her own business. It's unclear how else he could have been – Did the defense counsel even once mention this 8.65 in his closing? I would be surprised if he did. The defense counsel did not mention it. Because it doesn't help. I mean, I understand why that never came up in the closing, because it doesn't help the defense. It's geared to help the prosecution, at least in a case where, you know, intent in terms of the crime that's being charged is transferred to a different person. That, to me, again, is helping the prosecution meet its burden of showing that the elements of the offense were met. It's not helping the defendant show that the elements of a defense were established. With respect, the court of appeal found the opposite. The court of appeal found that when 8.65 says, you know, the intent, if any, transfers, it also found that the lack of intent, if any, also transfers. So here we have the lack of intent to kill. Here we have a justified, you know, if the jury were to believe that it was justified and reasonable, belief in the need to use deadly force. That same belief and that same intent would transfer and would erase the lack of intent with respect to a third party, with respect to a victim. And that's what the court of appeal here found. I'll be honest. I can't even – I don't even read it that way. I'd be shocked if any layperson read it that way. Maybe from a lawyer's standpoint, you know, you can – I don't know. I just don't find that instruction to be terribly helpful. Maybe you could help me with this. The jury did return a verdict of voluntary manslaughter. Your position or the State's position in the brief is that, oh, it must have found an imperfect self-defense, meaning that it obviously knew that self-defense was in the case. So what's the factual – what's the theory that the jury could have used to get to imperfect self-defense on these facts? So what the theory the jury could have used is, you know, so to begin with, I would like to also point the Court's attention to the fact that the jury was very sophisticated. There were a number of questions sent to the Court about, well, when does – how does felony murder work? When does the robbery end? When does this happen and that happen? They were very tuned in on how the instructions are to be read together. So once the jury had rejected the felony murder theory, and once the jury determined well, that the attempted robbery ended before this happened, then we have a situation of, is the person, is the Petitioner's belief in the need to use deadly force actual and is it reasonable? If it's both actual and reasonable, if he truly feels that he is under attack and he needs to use deadly force and it is a reasonable belief, that is involuntary. So let me stop you there. Let me make sure I got the facts straight. The – it's undisputed that Mr. Maldonado had a gun and tried to fire it at Mr. Randall, right? Yes, Your Honor. Okay. So forget about the timing of it. Just if that happens and Mr. Randall fires in response, what's the theory under which that could be imperfect self-defense? If he believed at the moment he actually fired the gun that it was no longer reasonable or rather his belief was not reasonable. If he had a gun at you, when would it ever not be reasonable for you to fire back in response? Well, for instance, if there had been already exchange of – if there already was an exchange of firearm – of fire and the person you were firing at had turned around and started running or if you no longer felt that your life was in danger. And, Your Honor, those determinations are truly up to the jury. Those are factual determinations. Were there any facts in the record that would support that determination is what I think Judge Roberts is asking. What were the facts in the record that would support that kind of a conclusion? Well, there was a factual – you know, there was an issue of who fired first. There was an issue of who – someone heard firecrackers. Someone heard one voice say one threatening thing. Someone heard something else. And there was really an issue of whether appellant – or I'm sorry, whether Petitioner fired first or who threatened first the deadly act. And that determination, the jury – the jury reasonably heard all of the testimony and possibly determined that at the time that Petitioner fired, he was under no reasonable fear of deadly force being used against him. Because I just – what you've just said doesn't match up with that at all. Unless maybe somehow he knew for sure that Mr. Maldonado had run out of bullets. Other than that, I don't – who cares who fired first? I mean – And possibly the jury made that determination. And – But there's no – there's no facts in the record that support that. No, the prosecution didn't argue that. The prosecution focused on felony murder again. The prosecution did not want to get into, oh, well, he had a reasonable belief. He, you know, he tried to conduct his drug deal, and it went bad, and now he gets to walk away scot-free. The prosecution was focused on felony murder. The prosecution was not focused on letting him have the benefit of perfect self-defense. So that was the prosecution's stance. And just to direct the – to direct this Court's attention to – to harmlessness too, Petitioner can show no actual prejudice here. He cannot show any substantial or injurious effect on the verdict. And, you know, I disagree with the formulation of opposing counsel that, you know, it's possible to show here that the jury – that the jury's verdict could have been a result of the jury believing that there was a – another – another reason for the involuntary manslaughter. Counsel, if you take the facts as recited by the – in the last reason state court decision, which is the Court of Appeals, and you take the facts and the like that are most favorable to support the jury verdict, the facts are – they're according to Maldonado's testimony, where he said he unzipped his jacket and reached in to hold his gun. And then Randall said, it's not worth it. And then the Court of Appeals says, thinking the man was about to rob him, Maldonado drew his gun. When he did, the man fired at him, and Maldonado shot back. Thereafter, the man fled, and Maldonado hid. He heard a woman yell that someone had a shot. Don't we have to defer to that – those facts and take those facts as true? We can't – we can't go into things that aren't there, like, oh, no, but, you know, we must have thought – thought he was out of bullets or the gun wasn't working properly. I mean, the guy – the guy testified he drew his gun. Your Honor, first I note that my time is up, but I would like to respond if possible. Please do. Go ahead. I also would like to note that the Court of Appeal made very clear that in certain instances of the appeal that the jury may or may not have misbelieved Maldonado's testimony. And there was certainly a lot of – a lot of space devoted to the fact that Maldonado got a deal and he got immunity, and the jury may have considered all of those things. And so the Court of Appeals' determination – Okay, but I'm taking the facts in the light most favorable to support the verdict. Isn't that what we're supposed to do? I mean, if you were looking at this, you're supposed to say, okay, take the facts in the government's best case. Yes, Your Honor. And so in the light most favorable to the verdict, most likely to support the verdict as the Court of Appeal found, it is entirely likely that the jury misbelieved the testimony as it was offered below and believed that the appellant – or I'm sorry, Petitioner was not in fear of – in actual fear of harm or that his fear was not reasonable, that it may have been an actual fear, but that it was not reasonable fear at the time he drew the weapon and fired at Maldonado and hit the victim. I say that doesn't make a lot of sense. If somebody draws a gun from his waistband and points it at me, I am in reasonable fear of my life. As soon as that happens – I mean, this is not my friend sort of playing around. We're not doing target practice. This is some guy in a parking lot who comes upon me, draws his gun, points it at me. At that point, I am in reasonable fear of my life. I think you would be, too. Any cop in the nation fires back immediately. I may be under an actual fear of my life, but it may or may not be reasonable depending on who I am, what my background is, whether I'm adept at armed robberies or not, et cetera.  And the Court of Appeals' decision that in light of all of these facts, the jury understood transferred self-intent is certainly under Richter not beyond fair-minded  Thank you, Your Honor. I will submit. Roberts. Well, we took you over. Why don't we give you two minutes? Thank you, Your Honor. The instructions here, there are 8.65, 5.30, 1.01, 5.13, 5.12, as well as 5.0. In order for the jurors to have understood Mr. Randall's claim of transferred self-defense from these jury instructions, the jurors would have been required to rewrite them. That is not what we expect of jurors. Jurors are not there to rewrite or redraft. They are not calgic. In order for them particularly to have understood the transferred intent instruction, it would have to have been completely redrafted. So the instructional error is clear. The next question is whether or not Mr. Randall was prejudiced by that error. He was. Under this the facts as presented in the record before this Court, it is clear that the jurors may have completely discounted Mr. Maldonado's testimony and didn't believe him. The defense counsel in closing argument spent a great deal of that argument trying to undermine Mr. Maldonado's credibility and claim that he had, that he did not fire first. Mr. Maldonado's gun was loaded, but it was not cocked. In other words, it is conceivable that Mr. Randall heard Mr. Maldonado fire his weapon while it was in his pocket and then began to return fire. The jurors may have believed that. That is not based on an imperfect self-defense. The jurors may have believed one of two theories, that this was a sudden quarrel. There was a lot of testimony from Ms. Roach, from Ms. Anschlem about this encounter between the two individuals in that parking lot. The jury's verdict makes clear. They rejected felony murder. So what they saw were two incidents, two incidents here. They saw a first incidence of an attempted robbery. They believed that was over at some point. And then you had this second altercation between Mr. Maldonado and Mr. Randall. In that altercation, that was their -- that's what they need to figure out. Okay. In this altercation, did Mr. Randall have a right to defend himself? And in inadvertently defending himself against Mr. Maldonado, did he accidentally kill Ms. Anschlem? They did not have sufficient jury instructions to understand that simple concept. And if they believe that, that that was not a crime, no matter how we slice it or dice it or look at these jury instructions, they do not convey that theory. He had a right to have that theory, and the jury advised us that that theory or that law, it is a recognized defense in the State of California, and they were not so advised. Under O'Neill, the Court must grant. There is a grave doubt as to whether prejudice occurred in this incidence, and the Court must grant the petition. Okay. Submitted. Thank you very much. Thank both sides for your argument. Randall v. Carey now submitted for decision.
judges: Wardlaw, Fletcher, Watford